Lisa M. Freeman
CA Bar No. 258549
lisa@dapeer.com
**DAPEER LAW, P.A.**
11500 W Olympic Blvd, Suite 550
Los Angeles, CA 90064
Telephone: 323-701-0508

*Attorneys for Plaintiff and the Proposed Classes*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Luke Johnson, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Cymbiotika LLC,<br><br>Defendant. | Case No. '26CV6118 TWR DDL<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Luke Johnson ("Plaintiff"), brings this class action against Defendant Cymbiotika LLC ("Defendant" or "Cymbiotika"), and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2. Cymbiotika is a dietary supplement company headquartered in San Diego, California that sells its products nationwide through its website and automatically renewing subscriptions. Cymbiotika advertises that it is a "science-backed, clinically proven solution" with its Liposomal Glutathione absorption being

3x higher than standard formulations.[1] Cymbiotika markets its products aggressively through text messages sent from the SMS short code 48189.

3. To promote its goods and services, Cymbiotika engages in unsolicited text messaging and continues to text message consumers after they have opted out of Cymbiotika's solicitations. Cymbiotika also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

4. Through this action, Plaintiff seeks injunctive relief to halt Cymbiotika's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the members of the Class. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

6. The Court has general personal jurisdiction over Cymbiotika, which is organized under the laws of Nevada and has its principal place of business in San Diego, California. The Court also has specific personal jurisdiction over Cymbiotika because this suit arises out of and relates to its contacts with California: Cymbiotika operates its text message marketing program from its San Diego headquarters, and the text messages at issue were initiated and directed from this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Cymbiotika resides in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, where Cymbiotika made the decisions that caused the text messages at issue to be sent and from which it sent them.

---

[1] *See* Cymbiotika, Liposomal Delivery, https://cymbiotika.com/pages/liposomal-delivery (last visited October 26, 2026).

## PARTIES

8. Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Maury County, Tennessee.

9. Plaintiff is, and at all times relevant hereto was, an individual and a "residential telephone subscriber" within the meaning of 47 C.F.R. § 64.1200(d), whose cellular telephone number received Cymbiotika's unwanted text messages.

10. Defendant Cymbiotika LLC is a Nevada limited liability company with its principal place of business in San Diego County. Cymbiotika directs the marketing of its products, including the text messages sent from short code 48189, and sets the policies and procedures, if any, that govern how opt-out requests are recorded and honored across the messaging platforms it uses.

11. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

### A. Cymbiotika's Text Message Marketing Program

12. Cymbiotika markets its supplements by sending text messages to consumers who have purchased its products, visited its website, or otherwise provided a telephone number to Cymbiotika.

13. Cymbiotika sends these text messages from the SMS short code 48189. The messages open with "Cymbiotika:", promote specific Cymbiotika products, announce percentage discounts and promotional codes, contain tracking links to Cymbiotika's online store, and instruct recipients to "Text STOP to opt-out."

14. Consumers who follow Cymbiotika's instruction and reply "STOP" are told, in an automated reply, that they are "unsubscribed from messaging" and that "[n]o more messages will be sent." Cymbiotika's published Terms of Service likewise represent that after a consumer texts STOP, "[n]o further messages will be

sent to your mobile device, unless initiated by you." Those Terms identify short code 48189 as the number to which the STOP command is sent and promise "a one-time opt-out confirmation text message."[2] The SMS sign-up form on Cymbiotika's website likewise tells consumers they may "[u]nsubscribe at any time by replying STOP."

**B. Cymbiotika's Text Messages to Plaintiff**

15. Plaintiff has purchased Cymbiotika products through an automatically renewing monthly subscription.

16. On March 24, 2023, at approximately 2:46 p.m., Cymbiotika sent Plaintiff a marketing text message from short code 48189 titled "Supplement Madness," which promoted four Cymbiotika products and offered "15% off + free shipping w/ code SPRING" with a link to Cymbiotika's store, as reflected by the following screenshot:




---

[2] Cymbiotika, Terms of Service § 23 (last modified September 3, 2026), https://cymbiotika.com/en-us/terms-of-service (last visited October 26, 2026).

17. That same day, Plaintiff requested to opt out of Cymbiotika's text messages by replying "Stop," exactly as Cymbiotika's messages instruct, as reflected by the following screenshot:




18. In response, Cymbiotika acknowledged Plaintiff's opt-out request with an automated reply: "Cymbiotika: You are unsubscribed from messaging. No more messages will be sent. Help at support@attentivemobile.com."

19. Plaintiff never re-subscribed, never provided his telephone number to Cymbiotika again, never replied to any further message from short code 48189, and never otherwise provided Cymbiotika with consent to send him marketing text messages after March 24, 2023.

20. For more than three years, Cymbiotika sent Plaintiff no text messages. Plaintiff's subscription continued to renew during that period without any accompanying marketing texts.

21. On September 28, 2026, the renewal date of Plaintiff's existing subscription, Cymbiotika sent Plaintiff a message reading, in part: "Cymbiotika: Thanks for ordering! . . . Continue shopping: https://klv.io/D7cGbH Text STOP to opt-out."

22. Cymbiotika then sent Plaintiff the following marketing text messages, each from short code 48189, each more than three years after Plaintiff opted out, and each within a span of approximately three weeks:















23. As demonstrated by the above screenshots, the purpose of each of Cymbiotika's text messages was to encourage the purchase of Cymbiotika's goods or

services, namely Cymbiotika dietary supplements, and each therefore constitutes "telemarketing" and a "telephone solicitation" within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(13) and (f)(15).

24. As demonstrated by the above screenshots, Cymbiotika does not honor consumer requests to opt out of text message solicitations. Instead, Cymbiotika continued to text message Plaintiff after Plaintiff sent a "Stop" message and after Cymbiotika acknowledged receipt of that message.

25. Cymbiotika's failure to honor Plaintiff's opt-out request demonstrates that Cymbiotika has not instituted adequate procedures for maintaining a list of persons who request not to receive text messages from Cymbiotika, and that Cymbiotika does not maintain an adequate company-wide do-not-call list. A do-not-call request made to Cymbiotika is a request not to receive telemarketing from Cymbiotika; it is not a request to be removed from a single vendor's database. By recording opt-out requests only within the messaging platform in use at the time, rather than on a single list that follows Cymbiotika to every platform and short code used "by or on behalf of" Cymbiotika, Cymbiotika has designed a system that fails to honor do-not-call requests as a matter of course. The precise details regarding Cymbiotika's lack of requisite policies and procedures are solely within Cymbiotika's knowledge and control.

26. Cymbiotika's failure to honor Plaintiff's opt-out request demonstrates that Cymbiotika does not adequately train its personnel engaged in telemarketing, including the employees and vendors responsible for its text message program and for the migration of that program between platforms, in the existence and use of Cymbiotika's do-not-call list. The precise details regarding its lack of training are solely within Cymbiotika's knowledge and control.

27. Cymbiotika did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff, as reflected by the fact that Plaintiff made an opt-out request that

Cymbiotika acknowledged, and Cymbiotika nevertheless sent Plaintiff at least two additional marketing text messages, each of them far more than ten business days after Plaintiff's request.

28. Under 47 C.F.R. § 64.1200(d)(6), Cymbiotika was required to maintain Plaintiff's do-not-call request for at least five years from the date it was made, through at least March 24, 2028. Every message described above was sent within that period.

29. Cymbiotika sent at least two solicitations to Plaintiff within a twelve-month period after Plaintiff's opt-out request.

30. Any established business relationship, prior express invitation, or permission that may have existed between Plaintiff and Cymbiotika terminated when Plaintiff sent the "Stop" request, and Cymbiotika was thereafter prohibited from initiating telephone solicitations to Plaintiff "even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

31. Plaintiff is the regular user of the telephone number that received the above text message solicitations.

32. Plaintiff utilizes the cellular telephone that received Cymbiotika's text messages for personal purposes and the number is Plaintiff's residential telephone line.

33. Plaintiff's telephone number has been registered on the National Do Not Call Registry since June 8, 2005.

34. Upon information and belief, Cymbiotika and its messaging vendors have access to outbound transmission reports for all text messages sent advertising or promoting Cymbiotika's goods and services from short code 48189. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Cymbiotika and its vendors also have access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests and Cymbiotika's automated acknowledgments of those requests, on both the

platform Cymbiotika used before its migration and the platform it uses now.

35. Cymbiotika's text messages caused Plaintiff and the Class members concrete harm, including inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

**Proposed Classes**

36. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

37. Plaintiff brings this case on behalf of the Classes defined as follows:

> **Stop Violation Class:** All persons within the United States who, within the four years prior to the filing of this action through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Cymbiotika's goods or services, to said person's residential cellular telephone number, more than ten business days *after* sending via text message a "stop" or similar opt-out instruction indicating to Cymbiotika that they did not wish to receive further telephone solicitations.

> **Do Not Call Registry Class:** All persons within the United States who, within the four years prior to the filing of this action through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Cymbiotika's goods or services, to said person's residential cellular telephone number, which number had been registered on the National Do Not Call Registry for more than thirty-one days, more than ten business days *after* sending via text message a "stop" or similar opt-out instruction indicating to Cymbiotika that they did not wish to receive further telephone solicitations.

38. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

39. Defendant and its employees or agents are excluded from the Classes.

**Numerosity**

40. Plaintiff does not know the exact number of members of the Classes but is informed and believes that there are at least hundreds, and likely thousands, of individuals who fall within the class definitions, given that Cymbiotika sends text message solicitations en masse from its short code, and, upon information and belief, resumed sending solicitations to every consumer on its customer list, including those who had previously opted out, when it moved its program to a new messaging platform. The members of the Classes, therefore, are so numerous that joinder of all members is impracticable.

41. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Cymbiotika's and its vendors' text message records, which record both inbound "STOP" requests and subsequent outbound messages, and from the National Do Not Call Registry.

**Common Questions of Law and Fact**

42. There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Classes are:

a. Whether Cymbiotika sent text messages to Plaintiff and the Class members;

b. Whether Cymbiotika continued to send text messages after opt-out requests;

c. Whether Cymbiotika failed to honor Plaintiff's and the Class members' opt-out requests;

d. Whether Cymbiotika's practice of recording opt-out requests only within the messaging platform in use at the time, rather than on a company-

wide do-not-call list applied across every platform and short code used by or on behalf of Cymbiotika, complies with 47 C.F.R. § 64.1200(d);

e. Whether Cymbiotika maintains an internal do-not-call list and instructs its employees and vendors on how to use the list;

f. Whether Cymbiotika maintains the required policies and procedures under section 64.1200;

g. Whether Cymbiotika sent telephone solicitations to numbers on the National Do Not Call Registry after the recipients' opt-out requests had revoked any prior express invitation or permission and terminated any established business relationship; and

h. Whether Cymbiotika is liable for damages, and the amount of such damages.

43. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**Typicality**

44. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**Protecting the Interests of the Class Members**

45. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. There are no conflicts of interest between Plaintiff and other Class members. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**Proceeding Via Class Action is Superior and Advisable**

46. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable.

While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Cymbiotika's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Cymbiotika. For example, one court might enjoin Cymbiotika from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## COUNT I

## VIOLATION OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)

## (On Behalf of Plaintiff and the Stop Violation Class)

48. Plaintiff re-alleges and incorporates paragraphs 1 through 47 as if fully set forth herein.

49. 47 U.S.C. § 227(c) directed the FCC to conduct a rulemaking proceeding "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."

50. In response, the FCC issued regulations including 47 C.F.R. § 64.1200(d), which provides, in pertinent part:

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) **Written policy.** Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) **Training of personnel.** Personnel engaged in . . . any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) **Recording, disclosure of do-not-call requests.** If a person or entity making . . . any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. . . .
>
> (6) **Maintenance of do-not-call lists.** A person or entity making . . . any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

51. Under 47 C.F.R. § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers.

52. Plaintiff and the Stop Violation Class members are residential telephone subscribers who received more than one text message made for telemarketing or solicitation purposes from Cymbiotika, which has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

53. Plaintiff and the Stop Violation Class members made requests to Cymbiotika not to receive solicitations from Cymbiotika.

54. Plaintiff and the Stop Violation Class members revoked any consent they may have provided Cymbiotika by responding with "stop" or similar opt-out instructions, which is the very method Cymbiotika designated for that purpose.

55. Cymbiotika continued to send solicitations to Plaintiff and the Stop Violation Class members to induce them to purchase products from Cymbiotika.

56. Cymbiotika failed to honor Plaintiff's and the Stop Violation Class members' opt-out requests, including by continuing to send them telemarketing text messages more than ten business days after receipt of their requests, and failed to maintain those requests for the five years required by 47 C.F.R. § 64.1200(d)(6).

57. Cymbiotika's refusal to honor opt-out requests is indicative of Cymbiotika's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call list.

58. Plaintiff and the Stop Violation Class members are informed and believe that Cymbiotika has not instituted procedures for maintaining a list of persons who request not to receive telemarketing text messages made by or on behalf of Cymbiotika, as opposed to opt-out records tied to a particular messaging platform.

59. Plaintiff and the Stop Violation Class members are informed and believe that Cymbiotika does not have a written policy, available upon demand, for maintaining a do-not-call list.

60. Plaintiff and the Stop Violation Class members are informed and believe that Cymbiotika does not adequately train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

61. The details and specific facts regarding Cymbiotika's failure to maintain the required policies and procedures, as well as personnel training, are solely within Cymbiotika's knowledge and possession.

62. Cymbiotika has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain opt-out requests for the required period, failing to follow the required policies and procedures, and failing to train its personnel engaged in telemarketing.

63. Plaintiff and the Stop Violation Class members are entitled to an award of up to $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5)(B).

64. As a result of Cymbiotika's knowing or willful conduct, the Court may, in its discretion, increase the award to Plaintiff and the Stop Violation Class members to up to $1,500.00 in statutory damages per violation. 47 U.S.C. § 227(c)(5). Cymbiotika's conduct was knowing and willful: Cymbiotika acknowledged Plaintiff's opt-out request in writing, told him that "[n]o more messages will be sent," promised the same in its published Terms of Service, and then resumed sending him marketing text messages from the same short code after moving its program to a new platform without carrying over the opt-out requests it had already received and confirmed.

**COUNT II**

**VIOLATION OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(c)(2)**

**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

65. Plaintiff re-alleges and incorporates paragraphs 1 through 47 as if fully set forth herein.

66. 47 C.F.R. § 64.1200(c)(2) provides that no person or entity shall initiate any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Under 47 C.F.R. § 64.1200(e), that prohibition applies to text messages sent to wireless telephone numbers.

67. Plaintiff's telephone number has been registered on the National Do Not Call Registry since June 8, 2005. The telephone numbers of the Do Not Call Registry

Class members were registered on the National Do Not Call Registry for more than thirty-one days before Cymbiotika's text messages were sent to them.

68. Cymbiotika initiated more than one telephone solicitation within a twelve-month period to Plaintiff and to each Do Not Call Registry Class member.

69. Cymbiotika did not have the prior express written consent of Plaintiff or the Do Not Call Registry Class members to send those solicitations, and any consent that may previously have existed was revoked by their "stop" or similar opt-out instructions. *See* 47 C.F.R. § 64.1200(a)(10).

70. Cymbiotika cannot rely on the established business relationship exemption because Plaintiff's and the Do Not Call Registry Class members' opt-out requests terminated any such relationship for purposes of telemarketing, "even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

71. Cymbiotika has violated 47 C.F.R. § 64.1200(c)(2) by initiating telephone solicitations to Plaintiff and the Do Not Call Registry Class members.

72. Plaintiff and the Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5)(B).

73. As a result of Cymbiotika's knowing or willful conduct, as alleged above, the Court may, in its discretion, increase the award to Plaintiff and the Do Not Call Registry Class members to up to $1,500.00 in statutory damages per violation. 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b. An award of statutory damages against Defendant for Plaintiff and each member of the Stop Violation Class and the Do Not Call Registry Class as applicable under the TCPA;

c. An order declaring that Defendant's actions, as set out above, violate the TCPA;

d. An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(c) and (d) by (1) promptly honoring opt-out requests across every messaging platform and short code used by or on behalf of Defendant; (2) carrying over all previously received opt-out requests to any messaging platform Defendant uses now or in the future; (3) providing the required training to its personnel engaged in telemarketing; and (4) maintaining a single, company-wide do-not-call list;

e. An award of Plaintiff's costs of suit; and

f. Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 27, 2026

Respectfully submitted,

**DAPEER LAW, P.A.**

*/s/ Lisa M. Freeman*
Lisa M. Freeman
CA Bar No. 258549
lisa@dapeer.com
11500 W Olympic Blvd, Suite 550
Los Angeles, CA 90064
Telephone: 323-701-0508

*Counsel for Plaintiff and the Proposed Classes*